# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| AXA EQUITABLE LIFE INSURANCE COMPANY | : : : : |
| v. | : : Civil Action No. CCB-09-1380 |
| RENEE ANDERSON, et al. | : : : |

...o0o...

## MEMORANDUM

Now pending before the court is co-defendant Renee Anderson's motion for summary judgment and co-defendant Ronald Anderson's motion for an order compelling co-defendant and plaintiff to respond to discovery. Plaintiff AXA Equitable Life Insurance Company ("AXA Equitable") has sued Ronald Anderson and Renee Anderson to interplead the benefits of a life insurance policy belonging to the defendants' deceased mother, Annette Morrison. Mr. Anderson, representing himself, has filed a cross-claim against Ms. Anderson, asserting his rights to the proceeds of their mother's life insurance policy. The issues in this case have been fully briefed and no hearing is necessary. For the reasons stated below, Ms. Anderson's motion will be granted in part and denied in part and Mr. Anderson's motion will be granted to a limited extent.

## BACKGROUND

Annette Morrison purchased a life insurance policy (the "Policy") for herself from AXA Equitable on or about April 16, 1991. Ms. Morrison named her daughter, Renee Anderson, as the sole beneficiary of the Policy. Although AXA Equitable allowed insured individuals to change their designated beneficiaries by written notice, AXA Equitable never received any written request from Ms. Morrison to change the beneficiary of her Policy. Ms. Morrison passed away on August 16,

2008, and Ms. Anderson submitted a claim for benefits on August 25, 2008. The proceeds of the Policy total $108,361.58.

Ronald Anderson, Ms. Morrison's son and Ms. Anderson's brother, submitted a claim for benefits as well. Mr. Anderson initially claimed that his mother had changed the Policy to include him as a beneficiary, but that Ms. Anderson must have changed the Policy, without their mother's knowledge or consent, to remove him as a beneficiary. (*See* Pl.'s Compl. Ex. 3.) In his cross-claim, Mr. Anderson asserts that Ms. Morrison intended to change the Policy to include him as a beneficiary and, at one point, was driven to the insurance company's office for the purpose of doing so. (*See* Ronald Anderson's Answer and Cross-cl. at 22-24, 26.) In his opposition brief, however, Mr. Anderson concedes that Ms. Morrison always intended to list Ms. Anderson as the sole beneficiary, but pursuant to an understanding that Ms. Anderson would share the proceeds with her brother. Mr. Anderson further alleges that during a phone conversation he had with his sister while in prison, Ms. Anderson admitted to purposely lying to their mother about sharing the life insurance proceeds with her brother. According to Mr. Anderson, this conversation was recorded by prison officials and may only be accessed if Ms. Anderson signs a release authorization form. Thus far, Ms. Anderson has refused to sign this authorization form.

AXA Equitable filed a lawsuit in the U.S. District Court for the District of Columbia on January 12, 2009 to interplead the defendants' rights under the Policy. The case was transferred to this court on May 15, 2009. AXA Equitable has paid the proceeds of the Policy to the Clerk of this court and was dismissed from the lawsuit with prejudice on December 23, 2009. On October 20, 2009, Mr. Anderson filed a motion for an order compelling Ms. Anderson and AXA Equitable to respond to his discovery requests. Ms. Anderson now moves for summary judgment, arguing that the court should deny Mr. Anderson's cross claim for the Policy's proceeds.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

As the court has diversity jurisdiction over this case, Maryland choice of law rules apply. *See CACI Int'l, Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). When

interpreting contracts and determining their validity, Maryland courts follows the principle of *lex loci contractus*, whereby the law of the jurisdiction in which the contract was made applies. *See Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992). "A contract is made in the place where the last act occurs necessary under the rules of offer and acceptance to give the contract a binding effect." *Cooper v. Berkshire Life Ins. Co.*, 810 A.2d 1045, 1053 (Md. Ct. Spec. App. 2002). Typically, an insurance contract is made in the state in which the policy is delivered and the premiums are paid. *See id.* In this case, the Policy was delivered to Ms. Morrison's residence in the District of Columbia and all premiums were paid in the District as well. Therefore, the substantive law of the District of Columbia applies.

In the District of Columbia, insurance contracts are construed as integrated and thus the parol evidence rule applies. *See Bolle v. Hume*, 619 A.2d 1192, 1197-98 (D.C. 1993). Courts are "reluctan[t] to look behind the clearly unambiguous language of a life insurance contract." *Id.* at 1198. Therefore, the intent of parties as expressed in the written contract is controlling and any changes of beneficiary designation must be evidenced in writing to be effective. *See id.* A court may not consider parol evidence of a party's intent to change the designated beneficiary when the insurance policy clearly designates a beneficiary. *See id.*; *see also Penn Mutual Life Ins. Co. v. Abramson*, 530 A.2d 1202, 1213 (D.C. 1987) (noting that "the intent of the insured, at the time the contract was entered, may be gleaned entirely from the unambiguous language chosen").

Ms. Morrison clearly indicated Ms. Anderson as the beneficiary of her life insurance policy. (*See* Mot. for Summ. J. Ex. 2.) Indeed Mr. Anderson does not argue in his opposition brief that Ms. Morrison mistakenly listed Ms. Anderson as the beneficiary or that she later changed her mind. (*See* Opp. to Summ. J. at 6.) Instead, Mr. Anderson asserts that Ms. Morrison and Ms. Anderson had an understanding pursuant to which Ms. Anderson was expected to share the proceeds of the life

4

insurance policy with her brother, Mr. Anderson. As evidence of this separate agreement, Mr. Anderson offers affidavits from two family members and a close family friend affirming this understanding. (*See* Opp. to Summ. J. Exs. A-C.) He has also filed a Rule 56(f) affidavit, asking the court to allow him the opportunity to discover additional evidence of this separate agreement between Ms. Morrison and Ms. Anderson. Mr. Anderson argues that he is not offering parol evidence because the understanding between his mother and sister is not contrary to the expressed designation in the contract. Rather, his evidence reveals a "fiduciary duty" his sister owes to him.

Yet evidence need not contradict a contract to be excluded; the parol evidence rule "establishes that extrinsic or parol evidence which tends to contradict, vary, add to, or subtract from the terms of a written contract must be excluded." *Segal Wholesale, Inc. v. United Drug Serv.*, 933 A.2d 780, 783 (D.C. 2007) (internal quotation marks omitted). The alleged agreement between Ms. Morrison and Ms. Anderson would add to the written insurance contract by inserting a condition to Ms. Anderson's receipt of the Policy proceeds: sharing the money with her brother. Therefore, the court may not consider any separate understanding between Ms. Morrison and Ms. Anderson for the purposes of interpreting the terms of the Policy.

Mr. Anderson also argues, however, that even if the separate agreement may not be considered for the purposes of interpreting the Policy, the court should consider it as evidence that Ms. Anderson used deceit to convince Ms. Morrison to list her as the sole beneficiary. Accordingly, Mr. Anderson asks the court to impose a constructive trust because Ms. Anderson dishonestly promised Ms. Morrison she would provide for Mr. Anderson in return for being named sole beneficiary. He argues that, with further discovery, he could demonstrate that Ms. Anderson "acquired her right to the life insurance proceeds by guile, deceit or subterfuge." *Bolle*, 619 A.2d at 1197.

5

A constructive trust is an equitable remedy "used to force restitution in order to prevent unjust enrichment." *Hertz v. Klavan*, 374 A.2d 871, 873 (D.C. 1977). "The inequitable conduct in question need not rise to [the] level of actual fraud …." *Bolle*, 619 A.2d at 1196. The D.C. Court of Appeals has imposed constructive trusts in contravention of written contracts, such as deeds to real property, where there is strong evidence of inequitable conduct. *See Gray v. Gray*, 412 A.2d 1208, 1210-11 (D.C. 1980); *Hertz*, 374 A.2d at 872-73. In *Gray*, the court established a constructive trust, allowing a mother's nine children to share title to their family house following their mother's death, despite the fact that only one daughter was listed on the deed. *See* 412 A.2d at 1210-11. The appellate court in *Gray* based its conclusion on the trial court's finding that the mother intended for all her children to share the property. *See id.* at 1211.

Two of the affidavits submitted by Mr. Anderson provide some support for his claim that his mother named Ms. Anderson sole beneficiary because Ms. Anderson promised to share the proceeds with her brother. (*See* Opp. to Summ. J., Frazier Aff. ¶ 8 Ex. B (stating that "Renee agreed to take care of her brother Ronald with the proceeds of Annette's life insurance policy and if Renee is not doing that, or intends not to take care of her brother as promised to my sister Annette, then Renee is not fulfilling my sister Annette's intentions related to her son Ronald ...") and Barnhart Aff. ¶ 4 Ex. C (explaining that Ms. Morrison named Ms. Anderson sole beneficiary because she "believed that Renee would look after her little brother with the proceeds ...").) In addition, if Mr. Anderson has accurately alleged that Ms. Anderson admitted to lying to Ms. Morrison during a recorded telephone call, such evidence would support imposition of a constructive trust. Accordingly, the court will grant Mr. Anderson's motion to compel discovery for the limited purpose of obtaining any relevant recorded telephone conversations from the Bureau of Prisons

before a final decision is made about whether the request for imposition of a constructive trust should proceed.[1]

## **CONCLUSION**

For the foregoing reasons, Ms. Anderson's motion for summary judgment will be granted in part and denied in part. Mr. Anderson's motion for an order compelling Ms. Anderson to respond to his requests for discovery will be granted for the limited purpose of obtaining a signed release authorization form from Ms. Anderson so that Mr. Anderson may obtain the telephone conversation recording from prison officials. A separate Order follows.


June  4, 2010                                           /s/
Date                                            Catherine C. Blake
                                                United States District Judge

---

[1] Imposition of a trust would apply only to one half the insurance proceeds, as there appears to be no dispute that Renee Anderson is entitled to at least one half of the money now in the registry of the court.